Good afternoon, Your Honors. Arianne Stein on behalf of Israel Ruiz, and I'd like to begin by saying that I am the Assistant State's Attorney, Karina Migani-Wakely. I represent the state of Illinois, and I'd like 15 minutes for my argument. Justice Breyer Just so you know, the microphone does not make it any louder for anyone, but it records. You can listen to it later on. Anybody can go on the website and listen to it. So if you could speak up so those in the back of the room can hear you, and stay near the microphone. I appreciate it. Thank you very much. May it please the Court, I will be addressing the second and third issues in the brief, which is the ineffective assistance of counsel issue and the de facto life sentence issue, and standing on the brief for the remaining issue. Concerning the second issue, Ruiz established cause and prejudice, where he argued that his trial attorney was ineffective for failing to investigate and present a defense witness, Christopher Anderson. Ruiz argued in his petition that he told his attorney to subpoena Anderson for trial, but counsel refused to do so. Anderson asserted in his affidavit that But didn't everything that Anderson would have testified to was already out in the trial because of his statement to ASA Quinn? Your Honor, it's true that Ruiz testified in her grand jury testimony that what was in Anderson's affidavit, that previous rival gang members had shot him and another friend, that did come out in her grand jury testimony, but it wasn't made clear that Ruiz knew about it. Now, in Ruiz's statement, he did make a mention of the fact that his prior friend, Christopher, had been shot by a rival gang member, but that could have been viewed by the jury as a self-serving statement. He established causes Well, then how do we know it was prejudicial? It could have. That's pretty speculative. Well, Your Honor, the state has argued that even if Anderson had testified to trial, it wouldn't make a difference because Anderson wasn't actually at the scene. And in the Makiola court, the court there rejected that argument by the state. In that case, the defendant was convicted of murder. And at trial, there was a witness who testified that another witness had seen the incident and the defendant had also confessed to him. In the post-conviction petition, that witness provided an affidavit saying that he did not witness the incident and that the defendant did not confess to him. Now, even though that when the individual was not at the scene of the crime, and so he couldn't have definitively established that the petitioner was not the murderer, the court held that even if everything in the affidavit is true, his testimony wouldn't show that this petitioner was the murderer. But nevertheless, the petitioner made a substantial showing that he was prejudiced by counsel's failure to investigate. And similarly, in the instant case, counsel's failure to do – Well, again, if the testimony basically came out at trial, then I don't see – I'm trying to understand the argument. Sure, Your Honor. I think that if I go to the Sparks case, that might shed some light on this. In the Sparks case, there was a murder and the defendant testified that the victim was the aggressor. Another witness testified that the defendant was the aggressor. The defendant in that case filed a post-conviction petition with a new affidavit from a new witness that supported the defendant's statement or version of events that the victim was the aggressor. Now, in that case, the defendant had already testified to that at trial. But of course, those people were there. Anderson was not there. So, again, it has nothing to do with what happened in the evening and whether four individuals were dressed in black or not. So that case really has little relevance to the situation here. That's true he wasn't at the scene. But for an ineffective assistance of counsel claim, we don't have to definitively prove that the outcome would be – Well, that's not a question of the outcome. It's a question of – I mean, here, that information, again, was presented. Again, the only way it was presented was through the defendant's testimony that he knew about it. There was no other testimony that he knew about the prior shooting. So, again, the jury could have viewed that as self-serving. And now we have a second witness who corroborates that, which also – Well, they could have both said that could have been self-serving, too, because Anderson was a friend and involved in various activities with the defendant. They had known each other. That's true, but he did lose an eye from the incident. So that would be something that would be hard to make up in that sense. But how does that determine the guilt or innocence of Ruiz? Well, it determines whether or not a second-degree murder instruction should have been given. We don't have to determine – at the leave to file stage, we don't have to definitively determine guilt or innocence, just whether he made a crime of facial showing of cause of prejudice, which he did here, because had Anderson testified, he has made a sufficient claim that he would have been – there's a reasonable probability he would have been given that second-degree murder instruction. And for these reasons, he asks on this issue that this Court remand for further proceedings. Concerning the de facto life sentence issue, this Court should remand the instant case for further post-conviction proceedings to give Ruiz the opportunity to make a record and show that this crime is not one that reflects permanent incorrigibility. Ruiz has made a crime of facial showing of cause of prejudice because his claims do not fail as a matter of law, and that's true for four reasons. The first is that the Miller protections apply to emerging adults. The second is that Miller protections apply to discretionary sentences. Third, Ruiz's sentencing court did not apply the Miller protections. And fourth, a sentence of exactly 40 years is a de facto life sentence. Why do you say the sentencing court? First of all, he was 19 at the time of the offense, correct? He was 18, less than six months. He was not a juvenile. I'm sorry? He was not a juvenile. That's correct, Your Honor. Okay. So Miller itself does not apply to anything but juveniles, correct? Now, under Holman, if Ruiz was a juvenile, let's say he was 16 at the time of the offense, Holman provides that on a post-conviction, a court considering whether Miller applied to this particular defendant, which I don't believe it does. I'll state that flatly. There are factors that a reviewing court or the trial court should look at to decide whether his youth was taken into consideration. Why can't we look at the sentencing hearing in this case to decide that if Miller applied, it was complied with? Why can't we do that? Your Honor, I think we can look at the sentencing hearing to see if he's been – And who was? The courts, I believe, can look at the sentencing hearing. I think it's must because Holman said, a court revisiting a discretionary sentence of life, which this isn't the case, but that's worse than this case, without parole must look at the cold record to determine if the trial court considered such evidence at the defendant's original sentencing hearing. A key feature of the defendant's sentencing hearing is that the defendant had, quote, the opportunity to present evidence to show that his criminal conduct was the product of immaturity and not incorrigibility. Now, are you contending that the sentencing court or the sentencing proceedings in this case, assuming Miller applied, which I don't take, but let's say you're right and others agree with you, that he did not have the opportunity to bring his purported youth to the attention of the court and that the court did not consider that? Your Honor, I believe that there was a general opportunity, but that was before the Miller decision, so it was not viewed through the lens of Miller. And also I believe that what he did here at the cause and prejudice stage is sufficient to move the case forward to second-stage proceedings. He has not had an attorney appointed for second-stage proceedings to flesh out the issue with more detail. Well, Holman covered that eventuality by saying, look to the sentencing proceeding and see what happened. If he had or she had the opportunity to present these factors, these, quote, Holman factors, then you don't get a new sentencing hearing either on a PC or on the review of a denial of a PC, successive PC. And I cite to you the case of People v. Croft, which was decided virtually within weeks of Holman, may have been the first decision after Holman, where the first district did exactly what the Holman court said to do, denied the resentencing hearing, affirmed the trial court's denial of the successive petition for a, I think a 16-year-old, may have been a 17-year-old, convicted of murder. The petition for leave to appeal to the Illinois Supreme Court of that appellate court decision was denied. And a petition for certiorari to the United States Supreme Court of that appellate court decision was denied. So it seems to me that you just don't get an automatic resentencing hearing by claiming that the trial court didn't consider things. Because if the trial court rejects or doesn't allow the successive filing, it comes to the appellate court, and the appellate court can look to the original sentencing hearing to see whether, if Miller applied, whether the Miller factors were taken into consideration. So why is this? Sure, Your Honor. The court can look at, or must look, as you said, if we're to take that view, at the sentencing hearing. But I think Holman is distinguishable on its facts. Holman, at the sentencing hearing, the sentencing court was given two or several psych evaluations, and those evaluations did not show that the defendant there had any specific immaturity or was prone to rash decision-making. Also in Holman, the defendant, the sentencing court knew that the defendant had two other murders in separate offenses. So besides the murder in the Inston case, there was... Regardless of what the facts were in Holman, Justice Tice specifically set forth, I think, five things that the reviewing court should look at in the original sentencing hearing. It didn't say meet the facts of this case or don't meet the facts of Holman. It said when this issue comes before you, look at the sentencing transcript. And if I look at this sentencing transcript, I see that it was extensive with respect to what the judge heard, considered, and decided upon. And it appears to me that because he had an extensive sentencing hearing, the defendant had an opportunity to present whatever he wanted, youthful or adult or whatever considerations. So that's the obstacle I see you're facing. Well, Your Honor, in the Harvey case and then the Edgehill case, the appellate court held that the sentencing court's awareness of defendant's youth or awareness of what's in the PSI is not sufficient. Here, the sentencing court said concerning his age, the only comment was I've considered the defendant's age. There wasn't any other considerations about his immaturity, his rash decision-making. So I don't think that the Miller factors. So your argument is that simply finding that the young age is a mitigating factor is not considering the Miller factors, that more is required. Correct, Your Honor. More is required. So, okay. So following up on both Justices' questions, what more should have been said or could have been said? Well, I think that if we compare this decision to House where that case was remanded for a new sentencing hearing, we see some similarities. The State has tried to distinguish House in its side of the Handy decision, which also distinguished House. But House, the Handy court overlooked important factors when distinguishing that case. First, the House decision relied on more than the fact that the defendant in that case was a lookout. They also considered his upbringing, his education. They pointed out that- In whose case now? In the House case, Your Honor. Okay. They pointed out that the defendant there had gone through 12th grade but hadn't graduated. And in the instant case, Ruiz points out in the petition, and I believe it's also pointed out in the sentencing hearing, that he only graduated through 8th grade. So he did not have the benefits of a high school education, which would be an important factor in whether his brain is more like that of a juvenile. For the second distinguishing factor in House is that House did deal with this lookout factor, that the defendant in that case was only accountable, and that's part of the reason why he deserved a new sentencing hearing. But this accountability factor really talks to peer pressure, whether the defendant is subject to peer pressure. And we have that factor in the instant case. Well, in House, though, it was a mandatory life sentence. Mandatory. So that the trial court had no discretion because of his, quote, youthful age. So I believe that's why the House court felt, because it was mandatory, he didn't consider the fact that he was only 19, which, again, I disagree with, but. That was part of the decision, but they did consider other factors. In Holman, for example, Miller, it states that Miller contains language that is broader than its core holding. And none of what the court said about juvenile brain development was specific only to mandatory sentences. Illinois courts have already granted Miller relief for discretionary sentences. In the Nieto case, the defendant was subject to a minimum 51 years, but given a 78-year sentence. I don't think any of us have a problem with the fact that now in Illinois the lower factors apply to discretionary and non-discretionary sentences. That's not the point. The point is, for me, Holman, and Holman tells me, and should tell every judge considering whether a sentencing hearing comported with Miller, if Miller applies, did these factors, were they considered? Well, Your Honor, almost every defendant has an opportunity for a sentencing hearing. And yet the Supreme Court in Harris and Thompson found that or instructed that this is the proper procedural path for a defendant to take, for a petitioner to take and raise his claim in a post-conviction petition. If Harris and Thompson were to say that nobody who ever had a sentencing hearing could meet the cause of prejudice standard, they wouldn't have so instructed. But weren't those at least one of those cases on direct appeal? That's true, but they both – Okay. This is a post-conviction proceeding. This is a successive post-conviction proceeding. The standard is substantially higher on a successive proceeding. Croft was a successive proceeding. Okay? In Harris and Thompson, Your Honor, one was a direct appeal and one was a 214-01 petition. And the Illinois Supreme Court said we can't consider those here. The proper path is to consider those in a post-conviction petition. Okay. So that's what Harris has done here. You have a post-conviction petition here. Is it your contention that this Court, in reviewing this claim, cannot look to the original sentencing hearing to decide whether, if Miller applies, that Miller was compliant with it? The Court can look to the sentencing hearing, but – Miller should under Holman. Even if I'll concede, Your Honor, that the Court should look to the sentencing hearing, but that's not the only thing that the Court should consider. Again, if there are allegations in the petition, as there were in this case about his, you know, lack of education, that showed he had more of a juvenile brain, those kinds of things can also be considered. It's not just the sentencing hearing. There are other factors that the Court can consider. And Rubin is – And as applied to this defendant. And did he have the opportunity to present that to the trial court? Because I presume what they were alluding to was either a waiver or forfeiture of the opportunity. They didn't do it so you don't get a second shot at the prize, so to speak. Again, Your Honor, that was before Miller was decided. They didn't have all this new brain research at the time of his original sentencing hearing that supports the claim. You're talking about the standards set forth in Holman. I just don't see how you get around Holman. Well, I think, Your Honor, that merely having an opportunity to present evidence at a sentencing hearing is insufficient. The Harvey and – Not according to Justice Tice. Well, the Harvey and Nieto cases, which I believe were decided after that case, have interpreted it to hold that, again, the statements like what the judge at the sentencing hearing did here are not sufficient. So you can look to the sentencing hearing, but in our case, it isn't sufficient. I think part of your argument, then, is that because the Miller factors didn't exist on the prior post-conviction petitions, there would be no reason to raise those issues before the court. And this is really the defendant's first opportunity to bring those issues before the court. Yes, that's – And in this case, I believe the judge summarily dismissed the third petition, correct? Yes, that's correct, Your Honor. And that's what makes this case different. Right, right. And Ruiz has been in prison for nearly 20 years, so he shouldn't be penalized for not being able to more specifically state how those factors apply to him. He's made the proper showing at the cause of prejudice stage. And that's why we need more post-conviction proceedings in order to get that information. Yes, correct, Your Honor. Clark was convicted in 1999. 1999. He had successive petitions. He brought this up in 2014, and we vacated our opinion in 2013 and 2014 because of Miller and considered it in 2018 because of Holman. The instructions from our Supreme Court telling the reviewing courts what to do when this issue arises under Miller if Miller is applicable. So assuming Miller is applicable, which I do not do in this case, I will tell you straightforward. But even if it did apply, you have not demonstrated why what happened at the sentencing court failed to comply with his rights. Well, this case may be different also because this is more than just Miller. This gets to whether or not Miller applies to the young adults who are not juveniles. And this now it's clear for some people that it does apply to young adults. And if it does, this is this defendant's first opportunity to bring that before court. Yes, that's correct, Your Honor. Yes. And I think the other issue that I see here is that the Miller factors would not even have been in play during the original sentence. So we can look to them all we want, but to know whether or not the court considered those, they were not an issue then. Yes, I agree, Your Honor. And that also makes this case different. Right, right. And certainly the new brain science talking about emerging adults and how their brains are similar to those of juveniles was also not available at that time. Finally, I'd like to point out that Ruiz's 40-year sentence should be considered a de facto life sentence. The language in the Buffer opinion wasn't entirely clear on whether a sentence of exactly 40 years should be considered a life sentence. But Ruiz asked this court to use the House Court's interpretation of Buffer, which held that a de facto life sentence is 40 years or more. Also, Ruiz will have to serve three years of MSR. And under the Coria case, the Illinois Supreme Court held that a person serving MSR is still serving his sentence in the DOC because the DOC retains custody of the person and the person's liberty will be restrained. So with the added MSR, Ruiz's sentence is really 43 years. For these reasons, Ruiz requests that this court remand for further proceedings. Thank you. Good afternoon again, Your Honors. I am Assistant State's Attorney Harina Megani-Wakely, representing the people of the state of Illinois. Leave to file was properly denied with respect to the ineffective assistance of counsel claim regarding witness Anderson. Defendant's burden is to show cause and prejudice. And here, before we reach cause and prejudice, the issue is waived and that justified the denial. This claim could have been raised in the 2006 post-conviction petition. At that time, defendant knew about Anderson. Defendant knew that he had asked his counsel to call him as a witness. Defendant knew that Anderson had not been called as a witness. And in his 2006 petition and the amendments, he also raised other ineffective assistance of counsel claims. So the issue is waived, and for that reason, the denial was proper. Moreover, defendant cannot show his burden, cause, or prejudice. There is no showing of cause here. Cause is an objective factor that impeded defendant from raising this in an earlier petition. And again, for the same reasons I just stated, he knew about Anderson and the fact that he was not called in 2006. Defendant knew where Anderson lived. There was no objective reason given in any of the pleadings as to why he did not get Anderson to come forward earlier. Yes, Anderson indicated, according to the documents filed, that he would not have testified at trial. Finally, in 2016, I'm willing to testify and files an affidavit. Defendant's burden is to show the due diligence that he did between the trial and 2016. Did he approach Anderson? Did he ask? Did Anderson say no? That's his burden to show, an objective factor that he has not met here. With respect to the other problem, the showing of prejudice, he also is unable to show prejudice, where this was not a claim that infected the trial so that the conviction violates due process. The analysis to be employed under that is the Strickland analysis. Was counsel deficient, and was there a resulting prejudice? And in this case, the answer is a resounding no. First, counsel's decision whether or not to call a witness falls within the realm of trial strategy, especially when counsel, as defending claims, knows about this witness. Due deference should be given to that strategic decision. I mean, here, it was entirely reasonable, assuming that counsel knew about Anderson, not to call him. First, he was not an eyewitness, could give no insight as to the shooting. He could only give inadmissible hearsay testimony. He was also in the same gang as defendant and supported probably the people's further allegation of bias of some of the witnesses that defendant did present at trial. And his testimony, while one way to look at it could have been that it might have supported some sort of second degree by the same token and more relevant is that it would have supported motive evidence that defendant shot in retaliation because one of his own had been shot earlier. Even if there was any deficient performance, there was no showing of prejudice under Strickland. Again, Anderson did not see anything. And the outcome, based on something that he didn't even see regarding the shooting, would not have made a reasonable probability of a different outcome. His statement, again, assuming it was admissible at trial, would not have overcome defendant's own statements negating any claim of second degree. And there was overwhelming evidence of guilt as characterized by this court on direct appeal and admission, three eyewitnesses of ID, motive evidence, gang rivalry, and forensic evidence that linked the murder weapon. And so for those reasons, leave to file was properly denied where he, defendant, was unable to meet his burden of cause and prejudice. And that leave should be affirmed by this court. Excuse me, leave, the denial of that leave should be affirmed. Excuse me. With respect to the Miller issue, leave to file was also properly denied. What, in the State's view, would a petitioner like Ruiz have to plead to be able to advance to a post-conviction proceeding? Under the Miller analysis? Yes. Well, we have insight from Harrison Thompson regarding the young adults that have raised Miller challenges under the proportionate penalty clause. And, you know, what we can gather from Harrison Thompson is that the presumption that exists for juveniles don't exist for young adults. So they do have to put forth. But let's just leave that question aside. What else, what would he have to say? What's missing here? He would have to show that as a young adult, he has the same cognitive characteristics as a juvenile such that the science that has been done on juveniles applies equally to him. And, well, obviously. Is there anything else? I mean, well, and that we know from extrapolating from the opinions that have come down from the Supreme Court that the age isn't enough to just meet that burden. It's not just necessarily the facts of the crime and the childhood trauma. That's not enough. There has to be something more. So how does he show that without a hearing? Well, Your Honor, one has to – When he's dismissed, he never gets an opportunity to show that. Well, no. That's – I mean, I tend to disagree because I would ask the court – So if it's merely dismissed, you just said you disagree with me. How does he show it if he never gets the opportunity to do so? What are you disagreeing with? Well, I – he does have an opportunity – I said he doesn't get an opportunity to show it if it's merely dismissed, and you say I disagree. What are you disagreeing with? Well, in this case, based on the posture of the case, which is leave to file a successive petition, there's a burden that he has to meet, and that burden is higher – Well, you're talking about something different than you really weren't responding to what I said then when you said I disagree. Well, he has to at least, at the very least, at least plead how he is like a juvenile based on the cognitive science, not just saying – This man who's locked up is supposed to know how to do this. That's your position? Right? But how does he know that? He's not a lawyer. And he doesn't have a lawyer at this point. So isn't that problematic? No, Your Honor. Why not? It is not problematic because, again, this is – this is a situation where the posture requires a burden to be met, and it's a higher standard than the gist standard, which we know the Supreme Court has said. And so while it's not a gist standard and there has to be some burden – and, again, defendant has to plead it. Well, at the very least, he has to show how his cognitive abilities are equatable to a juvenile. So he has to do a study of the science? This man who we have as an eighth-grade education is supposed to study this and come up with some reasoning that satisfies that higher burden? I'm trying to figure out practically how people – how can we ask a defendant to do that? Well, it's not enough for a defendant just to say I fall under the Miller line of cases. I mean, if that was the case, then that is more of a statement versus a burden. I'm sorry? What do you base that on? You say that it's not enough. What case are you citing for that proposition? Because that wouldn't be enough. That's your opinion, right? You're not citing a case. You don't have anything to support what you just said, correct? Well, it's – That's just your opinion. It's okay if it's just your opinion, but that's what it is, right? Well, I'd like to hear her answer, Mr. Justice Walker. I'm listening. I'd just like to hear what she'd like to say. I'm listening. Okay. Well, let her finish. Well, again – She's got to start talking. Okay. Well, again, I mean, with respect to the burden that a defendant has to meet, he does have to show cause and prejudice. And while one can say, you know, with respect to Miller line of cases coming down at certain times, his inability to raise it any earlier, that could satisfy cause, but he still has to show somehow under any of the cases that have come down, whether it's the Eighth Amendment cases or Illinois proportionate penalties, how he falls under any of those things. And so he can't do that based on the fact that he is a young adult, discretionary 40-year sentence. And right there, he cannot show prejudice based on those three things. It was he's over 18, he received a discretionary sentence, and he received a 40-year sentence. And so he cannot show prejudice just based on that. And he can say, well, it's prejudice under Miller. Well, this Court has the opportunity to see if at this stage, whether he has shown that he's prejudiced under Miller. And the answer is no, because the Eighth Amendment, and Miller makes clear, only applies to juveniles. And it has not been extended by Illinois courts. With respect to can he just based on saying, I'm a young adult, I have a discretionary sentence, and I have 40 years. That's what he's told this Court. I mean, this Court has the opportunity to see, has he shown prejudice such that the denial below was improper? And the answer is no, because he cannot show any prejudice under Harris and Thompson, which dealt with situations of young adults with mandatory sentences. Mitigation was never heard by the Court, and that was the focus as to why the Court's pronouncement was that young adults in those situations should be given an opportunity in post-conviction for hearing. As the Court said in Harris, as in Thompson, the record here, I'm saying this before us, does not contain evidence about how the evolving science on juvenile maturity and brain development that helped form the basis for the Miller decision applies to defendant-specific facts and circumstances. So wouldn't it be necessary, then, to go to the second stage? Well, I mean, in Harris and Thompson, because of the mandatory nature of the sentences and the fact that no mitigation was – Well, doesn't Illinois Supreme Court say it doesn't matter under Miller if it's mandatory or discretionary? They said that in Holman, didn't they? Well, Holman doesn't apply here. I said in Holman they said it doesn't matter whether it's mandatory or discretionary. Well, yes, they recognize that, but in the context, however, Holman was a situation of a juvenile. And we don't know whether he got a discretionary license. But with respect to – even if we were to somehow transpose the Holman analysis onto a young adult, in – Holman was very clear that you must look to the sentencing hearing to see if age and rehabilitation was considered by the trial court because it wasn't discretionary. And that was done in an era where it wasn't a thought in the minds of the judiciary or counsel because Miller was years away. And so, I mean, how – it seems to me we're putting these release in a catch-22 type situation, to use a phrase that has a certain meaning. Well, actually, I think he is in a situation where with all of these cases that have come down, that he has more of an opportunity to show possibly a constitutional violation because he can say I'm a Buffer situation, I'm a Holman situation, I'm a Thompson situation. But just because he says that he falls under those kind of categories and that they came after a sentencing, the issue before this Court as they're addressing those kind of things is was his sentence unconstitutional under Harris or Thompson? Was it unconstitutional under Buffer? Was he able to show prejudice for under those? And, again, looking at the Holman situation where it dealt with a discretionary sentence, I mean, the Holman court made very clear that on review to see if there's a Holman violation, you can look at the sentencing record and look at see if age was considered, see if rehabilitation was presented to the court, whether the defendant had that opportunity. And then the court was very clear that there's other factors that you can look at in this record regarding the juvenile's chronological age at the time of the offense, his family life, juvenile's degree of participation, ability to deal with police and attorneys. But even though the lawyers at that time would not have known to do that, we're supposed to assume they should have done it? No, but, Your Honor, it's looking at what the court prior to imposing sentence had before and it's the arguments of counsel, yes, while advocating of one sentence over another, but the focus should be on at least under the Holman scenario should it apply, should this analysis be imposed on this young adult, which we say shouldn't be done. I mean, you look at everything that was done at the sentencing. And then if after looking at that, if there are concerns, then there is a remedy. But in this case, there was no showing of prejudice under the Eighth Amendment or the Illinois Proportionate Penalties Clause. And I would direct this Court's attention to People v. Handy, which the State cited as additional authority as being not only instructive but also a little bit more restrictive.  It was the same procedure, but it was impossibly dispositive in this case because of the fact that it also looked at the young adult of a 50-year discretionary sentence, the same procedural posture, denial of leave to file a successive petition. And the Court looked at the same arguments that are being raised by this defendant regarding Harris, regarding the fact that he had a de facto life sentence under buffer, regarding that House is the controlling case. And the distinction that Handy made regarding House is totally in line with why it doesn't apply in this case. I mean, in House, again, consistent with Harris and Thompson, they addressed a mandatory sentence. There was no mitigation considered. And the most substantial factor was the fact that the defendant in that case was the lookout. And the sentence clearly was something that shocked the moral conscious, according to the Court's analysis, because the same sentence to a lookout, who wasn't even at the scene, was the same sentence that a principal got and that a juvenile in that case got even a lesser sentence. And so the Court's reasoning as to finding a credit violation was based on those specific facts, and none of those facts exist in this case. So the people behind you certainly would not be dispositive? I'm sorry. I would of course – well, it's instructive, but it is a First District case. It still would not be dispositive of this case. Under any circumstances could it ever be dispositive? It's instructive, and it's analysis relevant to this case. And we feel that it addresses the issue as well as the analysis that it employs is, you know, well-reasoned and should be employed by this Court also. For all those reasons, the people respectfully ask that the denial of leave to file the successive petition be affirmed. Thank you. Thank you, Your Honors. Your Honors, I have just a few brief comments. In the House case, the petition was originally dismissed after second-stage proceedings. In this case, Brad leaves the file stage, so Ruiz has not had the benefit of appointed counsel to flesh out the claim. Also, at the sentencing hearing in this case concerning applying any of the Miller factors, the sentencing court only said, I consider the defendant's age, and that is not enough under Miller. A defendant need not fully plead and prove a claim. Well, that's not all the judge considered. Well, under Harvey and Nietzsche, the court also – He said, I consider – he said – yes, I agree with you. He said, I consider his age, but he also considered other matters, correct? Sure, but not necessarily through the lens of Miller, Your Honor. And a defendant need – Well, of course he didn't because Miller hadn't been decided yet. But a judge 20 years ago could have talked about all the things that Miller talked about or considered all the things that Holman said a judge should consider. A judge could have been prescient and considered all those factors, correct? Just like in Croft. That's true, Your Honor, but I don't believe that the sentencing judge did consider those factors here. And that's why the case should be remanded for further second-stage proceedings. Okay. So you're – you agree that this Court can look at the sentencing transcript to decide whether, if Miller applies, Yes, Your Honor. the Holman factors set out by Justice Tice were addressed? I don't believe all of the Holman factors – No, but that's the analysis, correct? That the defendant should – You don't automatically get a resentencing. Wouldn't you agree with that? That's true. Okay. And you wouldn't automatically get a resentencing if, at the time of sentencing, the judge considered all the things that Justice Tice and Holman said a judge should consider, correct? That could be correct, depending if – unless the defendant had new information that he put in his petition. That would perhaps change the consideration. Because Holman says, did he have the opportunity to present? Well, I would say almost every defendant has an opportunity to present these kinds of factors. But under Harris and Thompson, those courts recommended or instructed that a defendant file this claim in a post-conviction petition. They would not have done that if almost every petitioner could not have met the cause and prejudice standard. So for these reasons, Ruiz requests that this Court remand for further proceedings. Thank you very much. Thank you. Appreciate the arguments of counsel, the briefs, the supplemental authority and response. Excellent. Gave us a lot to think about. And we'll take the case under advisement. Thank you.